LISA J. RODRIGUEZ
  ljrodriguez@schnader.com
(*Pro Hac Vice* Application Forthcoming)
SCHNADER HARRISON SEGAL & LEWIS LLP
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1165
Telephone: (856) 482-5222
Facsimile: (856) 482-6980

BRUCE B. KELSON (State Bar No. 202441)
  bkelson@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
650 California Street, 19th Floor
San Francisco, California  94108-2736
Telephone: 415-364-6700
Facsimile: 415-364-6785

*Attorneys for Plaintiff*
*UNIFY Financial Federal Credit Union*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNIFY FINANCIAL FEDERAL CREDIT UNION,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>TEMENOS USA, INC.,<br><br>　　　　　Defendant. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**(1) FRAUDULENT INDUCEMENT**<br>**(2) NEGLIGENT MISREPRESENTATION**<br>**(3) CALIFORNIA UNFAIR COMPETITION PURSUANT TO CALIFORNIA'S BUSINESS AND PROFESSIONS CODE § 17200** |

## **PARTIES**

Plaintiff UNIFY Financial Federal Credit Union ("UNIFY") alleges as follows:

1. Defendant Temenos USA, Inc., ("Temenos") is headquartered in Lake Mary, Florida, and incorporated in Delaware. Temenos touts itself as having the ability to combine "front to back" banking services and the most advanced cloud native technology. At all relevant times UNIFY dealt with Temenos, through Temenos representatives.

2. UNIFY's primary address is in Torrance, California. UNIFY is a Federally chartered credit union.

## JURISDICTION AND VENUE

3. Defendant is a corporation incorporated under the laws of Delaware, headquartered in Florida and with a principal place of business in Malvern Pennsylvania. Plaintiff is a federally chartered credit union with its principal place of business in Torrance, California. The amount in controversy exceeds $75,000, exclusive of fees and costs. Accordingly, this Court has diversity jurisdiction under 28 U.S.C. § 1332.

4. Defendant is subject to personal jurisdiction in this Judicial District, because it is registered to do business in California and directs business activities towards and conducts business with consumers within the State of California and this Judicial District.

## FACTUAL ALLEGATIONS

5. UNIFY was seeking to obtain and migrate updated software programs that would function in a cloud based platform, in early 2018. In order to accomplish this, UNIFY issued a Request for Information ("RFI") in the Spring of 2018. UNIFY solicited bids as part of its business plan to move entirely to the cloud. Accordingly, UNIFY only vetted those RFI responders that were cloud based.

6. Beginning in or around May 2018, UNIFY and Temenos entered into discussions to explore the licensing and use of Temenos Account Origination software ("AO"), Loan Origination software ("LO"), and Service Module software ("Service"). UNIFY was already using Temenos Collections software, pursuant to an existing agreement, but was seeking to move Collections to a hosted environment (collectively "the Software"). Specifically, Cary Shumway, from UNIFY, had negotiations with Temenos representatives, Geoffrey Nelsen ("Nelsen"), Eric Snyder ("Snyder") and Larry Edgar-Smith ("Edgar-Smith"). The negotiations included the Software acquisitions and migration to a cloud based environment as a singular negotiation. The two aspects of the negotiations were an integral part of UNIFY's plan.

7. As part of the negotiations, UNIFY disclosed the significant time constraints that accompanied its move to an entirely cloud based environment. UNIFY's time line was important because existing software licensing was scheduled to expire and would not be supported. Thus, it was necessary to resolve all migration issues, in a timely manner, since the Software would be sharing the same cloud platform and changes to one software would necessarily affect the others.

8. During these negotiations, Nelsen, Snyder and Edgar-Smith represented that Temenos "lived in the cloud and that it had customers that lived in the cloud." Temenos represented that, based on its experience with other customers it knew it was able to host and implement, on a stable, error free platform, the Software plaintiff sought to license from Temenos.

9. Temenos did not disclose that it did not have experience hosting AO, LO, Services and Collections, for a single client, and therefore, did not have any reliable data that it could actually support these functions for a single client. In fact, when Temenos was touting its expertise to UNIFY, in order to induce UNIFY to enter into the Agreements, it had no other customers, utilizing more than one

3
**COMPLAINT**

software application, live in the cloud. Because it did not have the experience it represented to have, it was unable to anticipate the issues that might arise when multiple software applications were running on the Temenos hosted cloud environment. When multiple issues did arise, because Temenos had no prior experience, it had no explanation for what caused the problem or a solution to remedy the issue. As a result, Temenos was unable facilitate UNIFY's successful migration to the cloud.

10. Temenos intentionally mislead UNIFY to believe that it had tested and had a reliable hosting solution for all its products. UNIFY relied on the representations made by Defendant, including Defendant representatives Nelson, Snyder and Edgar-Smith, that Temenos was a specialist in the cloud-based field of banking and finance software. Specifically UNIFY relied on the representations that Temenos was able to provide stable, reliable software and host it on a Temenos cloud platform. The Defendant's representations that it "lived in the cloud" and could support UNIFY's needs was the primary factor that informed UNIFY's decision to proceed with Temenos.

11. At no point did Temenos, including Nelsen, Snyder or Edgar-Smith, disclose to UNIFY that it did not "live in the cloud," that in fact it had no customers that had multiple software systems in the Temenos hosted cloud environment; and, that it had never successfully offered the services it represented it could provide. The representations were false. Temenos had no idea whether it was able to host the software on its cloud platform and in the time frame that UNIFY required.

12. Based on the misrepresentations of Nelsen, Snyder and Edgar-Smith on behalf of Temenos, UNIFY agreed to the negotiated plan by entering into a Master Software and Services Agreement for the Software in September 2018, and into a hosting agreement in March 2019, with the Temenos cloud host, (collectively the "Agreements"). If Temenos had not misrepresented its

4
**COMPLAINT**

experience, or disclosed that Temenos had that it had no experience hosting AO, LO, Services and Collections for a single client, UNIFY would not have entered into the Agreements with Temenos.

13. Based on the representations made by Temenos, and in order to move its business to the cloud, UNIFY migrated its Collections processing from on-premises to the cloud in May 2019. This migration was necessary so that there could be full vertical integration and Project kick-off could occur in June 2019, with the goal of going live in March 2020.

14. The original agreed upon deadlines were pushed back as the parties dealt with COVID issues. The project was back at full speed in July of 2020. In August 2020, the parties negotiated a new "go live date" of October 16, 2020, with an agreement that all mock conversions and other implementation issues be resolved prior to the "go live date." The mock conversion was plagued with problems.

15. Connection issues with the Software on the hosting platform were identified early in the conversion process. In September, 2020, Kevin Bingham, a UNIFY consultant and project manager, informed the Temenos implementation team, including Michael Ruggerio, Daryn Hoke and Morgan Kennedy about the serious issues which were in danger of impacting the required UNIFY timeline.

16. UNIFY learned that Temenos had no other customers with multiple software applications live in the cloud and that Temenos had misrepresented its experience in order to induce UNIFY to enter into the Agreements with UNIFY. If UNIFY had the experience it represented it had, most of the issues plaguing the Temenos migration and conversion would have been avoided.

17. In light of the issues presented UNIFY agreed to a roll out of the "go live" dates. It was agreed that Collections would go live on November 9, 2020 and AO, LO and Service would go live on November 12, 2020. It was important Collections go first because there was no back-up plan for Collections. UNIFY

5
**COMPLAINT**

had to ensure Collections was up and running before AO, LO and Service could be moved to the platform. This never occurred. Collections attempted to launch as scheduled, but configurations were missing causing it to go down for two days.

18. This was just the start of the issues that plagued the attempt to go live. There were serious issues with the Temenos hosting environment that caused unstable software performance seriously affecting the ability to service the needs of UNIFY and its customers. One of the many problems involved the delay between a user command and the system response, this delay made the platform unreliable.

19. UNIFY withheld payments due to Temenos for the software and hosting platform when UNIFY began to fear that, despite Temenos' representations that it was experienced in hosting multiple software systems in is cloud platform, that it lacked experience and was not able to accomplish what it had promised,

20. When the LO software was launched, there was an issue with the mingling of loan applicants' information. One applicant's information would appear on another applicant's form and vice versa. It was never clear whether this was an error in information retrieval, an error in the unique identifier or something else. In addition, other applications were randomly duplicated in the system or simply lost. Temenos could not explain the reason for the issues or provide any reassurance that the issues would not reoccur.

21. Temenos attempted to apply a "hot fix," to address this issue, but it was never able to identify the cause of the issue. "Hot fixes" are used as an urgent measure against software issues that need to be fixed immediately, so that the issue does not cause system outages. It is important, however to identify the cause of the issue to avoid additional problems.

22. The many issues that plagued the migration to the cloud were not issues that could have been detected until the project went live in November 2020.

If Temenos actually "lived in the cloud" as it represented, it would have known that its platform was unstable and could not support the needs of UNIFY and its customers.

23. UNIFY continued to discuss the problems with the Temenos Software and hosting platform with the Temenos management team. Specifically, Cary Shumway of UNIFY worked with the Temenos project team, including Daryn Hoke, Mike Ruggiero, Melissa Bachman and David Miller to address the issues plaguing the project launch and looming UNIFY deadlines.

24. The Temenos management team repeatedly issued "hot fixes" in an attempt to address the problems, suggesting that they would in fact be able to get UNIFY in the cloud and that its cloud environment worked. The Temenos management team was, however, never able to identify the issues with its hosting platforms and they were never able to get UNIFY in the cloud because, its hosting environment did not work in a stable, error-free environment.

25. Each "hot fix" required UNIFY to repeat the testing process at considerable expense to UNIFY. The issues that arose only came up in a live environment and could not be identified until UNIFY went live.

26. If Temenos in fact "lived in the cloud" as it represented when it induced UNIFY to enter into the Agreements, it would have known that it was unable to provide a reliable, stable cloud platform. In part, the cloud platform was unstable because there was no defined closure to the collection calls. As a result, the port was over loaded causing pages to fail to load as well as other latency problems.

27. Throughout December 2020, UNIFY continued to meet with Temenos as the Temenos implementation team attempted to resolve the problems that thwarted UNIFY's successful conversion to a cloud platform. Despite the efforts of the parties, the Temenos system performance continued to deteriorate.

28. In order to induce UNIFY to enter into the Agreements, Temenos represented that it would repair and or re-preform the services within five days of Notice. This did not happen. Despite repeated attempts to repair the defects, Temenos was unable to deliver the Software and hosting services that it promised, in order to induce UNIFY to enter into the Agreement.

29. A final stability date of January 4, 2021, was set for Temenos. Temenos failed to meet that deadline. The performance of AO, LO and Collections in the hosted environment was so poor, implementation of Service was never commenced.

30. Because of Temenos' inability to provide a stable cloud platform UNIFY informed Temenos that it would have to move Collections from the cloud, back to an on-premise solution. UNIFY migrated Collections back to an on-premise solution on January 27, 2021.

31. If Temenos had disclosed that it did not have the experience and capacity to host the Software, UNIFY would not have entered into the Agreements. Similarly, UNIFY would not have entered into the Agreements if it knew that Temenos did not have the experience and expertise to repair defects in the cloud hosting environment.

## COUNT I
## FRAUDULENT INDUCEMENT

32. Plaintiff re-alleges and incorporates by reference the allegations of the foregoing paragraphs of the Complaint as though set forth herein in full.

33. Defendant made numerous material representations and promises to Plaintiff regarding its ability to host its Software in the cloud, including the fact that Defendant "lived in the cloud" and hosted other customers on its cloud based platform.

34. Defendant concealed from Plaintiff material facts including, its lack of experience hosting multiple software programs in its cloud hosting environment

and in fact Temenos had no idea whether the Software it provided to Plaintiff would be able to interact with each other in its hosted cloud platform. It also concealed that it was unable to identify and address defects in its hosted cloud platform. As a result, Defendant could not deliver a product that would serve the needs of UNIFY and its customers. Defendant had exclusive knowledge of those facts and had a duty to disclose and not to actively conceal its ability to provide Plaintiff with Software that could function in a stable, error-free cloud platform for the Software.

35. Defendant knew each of its representations and promises were false at the time they were made, or were made recklessly without regard for the truth and were made without knowing whether Temenos could provide the services and platform it promised. Nonetheless, Defendant made each representation and promise in an effort to induce Plaintiff enter into the Agreements.

36. Defendant intended that Plaintiff rely on each representation in making its decision whether or not to enter into the Agreements with Defendant.

37. Plaintiff reasonably relied upon each of Defendant's representations, and Plaintiff was unaware of facts concealed from it in making its decision whether or not to enter into the Agreements with Defendant. Had Plaintiff known the facts concealed from it by Defendant or the falsity of Defendant's representations, Plaintiff would not have entered into the Agreements with Defendant.

38. Plaintiff was harmed by Defendant's representations and concealment, which was a substantial factor in causing the harm.

39. As a result, Plaintiff has suffered damages, according to proof at trial.

**WHEREFORE**, Plaintiff prays for judgment and relief, including exemplary damages, as set forth more fully below.

## COUNT II

## NEGLIGENT MISREPRESENTATION

40. Plaintiff re-alleges and incorporates herein by reference the

9

**COMPLAINT**

allegations of the foregoing paragraphs of the Complaint, as though set forth herein in full.

41. Defendant made numerous material representations and promises to Plaintiff regarding its ability to host its Software in the cloud, including the fact that Defendant "lived in the cloud" and hosted other customers on its cloud based platform.

42. Defendant concealed from Plaintiff material facts including, its lack of experience hosting multiple software programs in its cloud hosting environment and in fact Temenos had no idea whether the Software it provided to Plaintiff would be able to interact with each other in its hosted cloud platform. It also concealed that it was unable to identify and correct defects that occurred in it hosted cloud platform. As a result, Defendant could not deliver a product that would serve the needs of UNIFY and its customers.

43. Defendant had exclusive knowledge of those facts and had a duty to disclose and not to actively conceal its ability to provide Plaintiff with Software that functioned in a stable, error-free cloud platform for the Software.

44. Defendant knew each of its representations and promises were false at the time they were made, or were made recklessly without regard for the truth and were made without knowing whether Temenos could provide the platform as promised. Nonetheless, Defendant made each representation and promise in an effort to induce Plaintiff to enter into the Agreements.

45. Defendant intended that Plaintiff rely on each representation in making its decision whether or not to enter into the Agreements with Defendant.

46. Plaintiff reasonably relied upon each of Defendant's representations, and Plaintiff was unaware of facts concealed from it in making its decision whether or not to enter into the Agreements with Defendant. Had Plaintiff known the facts concealed from it by Defendant or the falsity of Defendant's representations, Plaintiff would not have entered into the Agreements with Defendant.

47. Plaintiff was harmed by Defendant's representations and concealment, which were substantial factors in causing the harm.

48. As a result, Plaintiff has suffered damages, according to proof at trial.

**WHEREFORE**, Plaintiff prays for judgment and relief, including exemplary damages, as set forth more fully below.

## COUNT III

## CALIFORNIA UNFAIR COMPETITION PURSUANT TO CALIFORNIA'S BUSINESS AND PROFESSIONS CODE § 17200

49. Plaintiff re-alleges and incorporates herein by reference the allegations of the foregoing paragraphs of the Complaint as though set forth herein in full.

50. The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading advertising. Cal. Bus. Prof. Code § 17200.

51. The UCL imposes strict liability. Plaintiff need not prove that Temenos intentionally or negligently engaged in unlawful, unfair, or fraudulent business – only that such practices occurred.

52. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. That unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the victims.

53. Temenos' actions constitute "unfair" business practices because, as alleged above, Temenos represented that it had the ability to host its Software in the cloud, including that Temenos "lived in the cloud" and hosted other customers on its cloud-based platform. Temenos concealed the fact that it had no idea whether its Software would be able to interact with each other in its hosted cloud environment. It also misrepresented and concealed its ability to identify and

1 address defects in its hosted cloud platform. Temenos' acts and practices offended
2 an established public policy of transparency and it engaged in immoral, unethical,
3 oppressive, and unscrupulous activity that was injurious to UNIFY.

4     54. The harm to UNIFY outweighs the utility of Temenos' practices.
5 There were reasonably available alternatives to further Temenos' legitimate
6 business interests other than the misleading and deceptive conduct described
7 herein.

8     55. A business act or practice is "fraudulent" under the UCL if it is likely
9 to deceive members of the consuming public.

10     56. Temenos' acts and practices alleged herein constitute fraudulent
11 business acts or practices as they have deceived UNIFY. Plaintiff relied on
12 Temenos' fraudulent and deceptive representations regarding its ability to host it
13 Software in the cloud and its ability to identify and address problems in its hosted
14 cloud platform. These misrepresentations played a substantial role in Plaintiff's
15 decision to enter into the Agreements and Plaintiff would not have entered into
16 these Agreements without Temenos' misrepresentations.

17     57. Temenos' acts and practices alleged above constitute unlawful
18 business practices as they have violated the common law and federal law. The
19 Federal Trade Commission's Act ("FTCA") prohibits "unfair or deceptive acts or
20 practices in or affecting commerce" (15 U.S.C. § 45(a)(1)).

21     58. The violation of any law constitutes an "unlawful" business practice
22 under the UCL.

23     59. As detailed herein, the acts and practices Alleged were intended to or
24 did result in violations of common law and violations of the FTCA.

25     60. In violation of California's statutory prohibitions against unlawful and
26 fraudulent business practices, Defendant induced Plaintiff to enter into the
27 Agreements for the Software and for migrating and implementing the Software on
28 its cloud based platform, knowing that it did not have the experience or expertise to

assure that it could provide a stable, error free hosting environment in order to meet Plaintiff's time frame.  Defendant's representations and omissions were a substantial factor in Plaintiff's decision to enter into the Agreements.

61. Pursuant to the UCL, UNIFY is entitled to preliminary and permanent injunctive relief and order Temenos to cease its unfair competition as well as disgorgement and restitution to Plaintiff of all Temenos revenue associated with its unfair competition.

**WHEREFORE**, Plaintiff prays for judgment and relief as set forth more fully below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendant as follows:

    a. restitution in an amount to be determined at trial

    b. compensatory damages general and/or special, directly and proximately resulting from Defendant's wrongful acts, in an amount to be determined at trial;

    c. exemplary damages against Defendants in an amount to be determined at trial;

    d. waiver of all outstanding amounts believed due from UNIFY, including but not limited to licensing fees;

    e. costs of suit;

    f. awardable interest at the maximum legal rate; and

    g. entry of an Order for further relief as the Court may deem just and proper.

/ / /

## **DEMAND FOR JURY TRIAL**

**PURSUANT TO** Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff hereby demands a trial by jury on any and all issues triable to a jury.

Dated:  December 23, 2021        SCHNADER HARRISON SEGAL & LEWIS LLP

By:  */s/ Bruce B. Kelson*
           BRUCE B. KELSON

Attorneys for Plaintiff
UNIFY FINANCIAL FEDERAL CREDIT UNION

7967398_1